UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GUILLERMO VILLA,

                Petitioner,

               - against -

SUPERINTENDENT MARK PASSAGE, et. al.

                Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>DECLARATION IN OPPOSITION TO PETITION FOR A WRIT OF HABEAS CORPUS</u>
22 Civ. 02918 (VEC)(SDA)

       T. CHARLES WON, an attorney admitted to practice in the State of New York, and before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true, except those made upon information and belief, which he believes to be true:

       1.     I am an Assistant District Attorney in the Office of DARCEL D. CLARK, District Attorney, Bronx County, and submit this declaration in opposition to the petition for a writ of *habeas corpus*. Pursuant to an agreement with the Office of the Attorney General of the State of New York, this Office represents respondent.

       2.     This answer is based upon records maintained by this Office and the court records, unless otherwise indicated.

       3.     The transcripts of petitioner's state court trial, a copy of which is stored on this Office's computer database, are submitted herewith.

       4.     At approximately 2:25 p.m. on September 24, 2011, petitioner shot and killed Cedrick Sambolah in front of 1246 Burke Avenue in Bronx County. The shooting was apparently in retaliation for an incident that had occurred the previous night. Seyquana Rambert, the victim's girlfriend, witnessed the murder. As Ms. Rambert was walking towards Sambolah, she saw petitioner approach from the opposite end of the street. Ms. Rambert noticed that petitioner was wearing a

1

blue top -- Ms. Rambert's favorite color.   As Ms. Rambert watched, petitioner walked up to Sambolah and raised his right hand, holding a handgun.   Ms. Rambert turned away and heard multiple gunshots. She then saw the victim lying on the ground, bleeding, as petitioner fled the scene.   Ms. Rambert identified petitioner in a photo array, a lineup, and at trial as the person who had shot and killed her boyfriend.

5.      By a judgment rendered on April 23, 2014, petitioner was convicted in the New York State Supreme Court, Bronx County (Massaro, J.), of Murder in the Second Degree (Penal Law § 125.25[1]) and Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[1][b]). The court sentenced him, as a second felony offender, to a prison term of twenty-five years to life on the murder count and to a concurrent prison term of fifteen years, to be followed by five years of post-release supervision, on the weapon count.   Petitioner is currently serving his prison sentence.

6.      In his state court appeal, petitioner raised various claims.   Pertinent here, petitioner challenged the validity of his decision to waive a jury trial, arguing, among other things, that the court should have permitted him to consult with his family about the decision.   Petitioner also argued that the trial court had improperly permitted trial testimony to be given prior to the decision on petitioner's motion to suppress.   And, petitioner argued that his attorney had provided ineffective assistance by not arguing that petitioner should be permitted to consult with his family about the jury trial waiver and by consenting to the admission of trial testimony during the suppression ruling (Exhibit 1, Petitioner's appellate brief; and Exhibit 2, Respondent's appellate brief).

7.      The New York Appellate Division, First Department, unanimously affirmed petitioner's conviction.   Pertinent here, the Appellate Division ruled that petitioner had not preserved his challenge to the validity of his waiver of a jury trial.   As an alternative holding, the court found that nothing in the record "cast doubt" on the validity of the waiver or suggested that "further inquiry

by the court was necessary."   Additionally, the Appellate Division found no error in the fact that the defense had "consented to the inconsequential presentation of some trial testimony before the determination of the suppression motion."   The Appellate Division also ruled that petitioner's ineffective assistance claims based on trial counsel's "failure to raise various above-discussed issues" were unreviewable on direct appeal; alternatively, "to the extent the existing record permits review," the Appellate Division found that counsel provided effective assistance.   *People v. Villa*, 174 A.D.3d 438 (1st Dept. 2019).   On November 22, 2019, a judge of the New York Court of Appeals denied petitioner's application for leave to appeal.   *People v. Villa*, 34 N.Y.3d 1019 (2019).

8.     On February 10, 2021, petitioner moved to vacate the judgment of conviction, pursuant to N.Y. Crim. Proc. Law § 440.10, alleging that his trial attorney rendered ineffective assistance.   Petitioner claimed that his trial attorney: (a) "fail[ed] to obtain the assistance of an expert on eyewitness identification," (b) "fail[ed] to intervene or object where [petitioner] stated clearly that he wanted to speak with his family before deciding whether to waive his fundamental right to a jury in a murder case," (c) "fail[ed] to properly counsel [petitioner] on the trial rights that he would be waiving in choosing to have a bench trial," and (d) "improperly consent[ed] to allowing in trial testimony before the suppression hearing had concluded" (Exhibit 3, Petitioner's NYCPL § 440.10 motion; Exhibit 4, Respondent's Affirmation in Opposition; and Exhibit 5, Petitioner's Reply).

9.     On September 28, 2021, the New York State Supreme Court, Bronx County (Marcus, J.), denied petitioner's 440.10 motion.   The court ruled, in pertinent part, that (a) petitioner's trial counsel effectively challenged the identifying witness's testimony at the bench trial, and petitioner suffered no prejudice from the absence of an identification expert; (b) petitioner validly waived his right to a jury trial following a thorough inquiry by the court over a period of two days and a discussion with counsel, and counsel had no duty to argue that petitioner should have been afforded an additional

3

opportunity to talk to his family after petitioner made a single, offhand comment in that regard, which he never repeated; and (c) petitioner suffered no prejudice from trial counsel consenting to have certain trial testimony be heard before the conclusion of the suppression hearing – presumably because of a witness's availability issues – as the record provided no reason to conclude that the challenged testimony influenced the court's suppression ruling (Exhibit 6, Decision and Order dated September 28, 2021, pp. 2-14).   The court observed that trial counsel "was a zealous advocate" on petitioner's behalf, and the fact that "his trial strategy was ultimately unsuccessful does not render his representation ineffective" (*id.* at 14).    On March 21, 2022, a justice of the Appellate Division, First Department, denied petitioner's application for leave to appeal the denial of his 440.10 motion.

10.     Now, in a *pro se* application filed on March 24, 2022, petitioner seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, repeating the arguments raised in his 440.10 motion.

11.     For the reasons set forth in the accompanying Memorandum of Law, the *habeas corpus* application should be denied.

**WHEREFORE**, respondent respectfully requests that the petition be denied.

Dated: Bronx, New York
        September 26, 2022

           ___s/ T. Charles Won_____
           T. CHARLES WON (TW1121)
           Assistant District Attorney
           Bronx County District Attorney's Office
           Appeals Bureau
           198 E. 161st Street
           Bronx, New York 10451
           (718) 838-7097
           wonc@bronxda.nyc.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GUILLERMO VILLA,

        Petitioner,

                                              22 Civ. 02918 (VEC)(SDA)

        - against -

SUPERINTENDENT MARK PASSAGE, et. al.

        Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## **<u>MEMORANDUM OF LAW</u>**

 

                                            **DARCEL D. CLARK**
                                            District Attorney, Bronx County
                                            198 East 161st Street
                                            Bronx, New York 10451
                                            (718) 838-7129
                                            Attorney for Respondent

DAVID M. COHN
RAFAEL CURBELO
T. CHARLES WON
Assistant District Attorneys
     *of Counsel*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................ii

ARGUMENT.........................................................................................................................1

THE STATE COURTS' DENIAL OF PETITIONER'S INEFFECTIVE ASSISTANCE CLAIMS WAS NEITHER CONTRARY TO NOR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT ................. 1

A   Standard of Review ..................................................................................... 2

B.  Trial counsel had no obligation to call an identification expert at petitioner's bench trial.................................................................................................... 4

C.  Trial counsel properly advised petitioner regarding his waiver of the right to a jury trial.................................................................................................... 11

D.  Counsel was not obligated to object to the court's decision to receive trial testimony before the conclusion of the suppression hearing ..................................... 18

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Brown v. Lee*, 14 Civ. 9718 (KMK), 2019 WL 5078360 (S.D.N.Y. Oct. 10, 2019) ............................... 19

*Brown, Jr. v Fisher*, 06 Civ. 2771 (RJS)(JCF), 2010 WL 3452420 (S.D.N.Y. Aug. 27, 2010) ................... 4

*Cabrera v. New York*, 16 Civ. 7938 (KPF), 2018 WL 5276425 (S.D.N.Y. Oct. 23, 2018) .................... 17

*Dunn v. Reeves*, _U.S._, 141 S. Ct. 2405 (2021) .........................................................3, 4, 5, 10

*Fields v. New York*, 18 Civ. 2579 (CBA), 2021 WL 3741506 (E.D.N.Y. Aug. 24, 2021) .........................9

*Harrington v. Richter*, 562 U.S. 86 (2011)..................................................................... 2, 3

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) ...................................................................3

*McDowell v. Heath*, 09 Civ. 7887 (RO)(MHD), 2013 WL 2896992 (S.D.N.Y. June 13, 2013) ...... 4, 5, 10

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ................................................................... 19

*People v. LeGrand*, 8 N.Y.3d 449 (2007) .......................................................................6

*People v. Santiago*, 17 N.Y.3d 661 (2011)......................................................................6

*People v. Villa*, 174 A.D.3d 438 (1st Dept. 2019) .......................................................7, 8, 17, 18

*Renico v. Lett*, 559 U.S. 766 (2010) ...........................................................................2

*Rivera v. Kaplan*, 17 Civ. 2257 (RA)(SN), 2020 WL 5550047 (S.D.N.Y. July 20, 2020),
   *report and recommendation adopted*, 17 Civ. 2257 (RA)(SN),
   2022 WL 3572880 (S.D.N.Y. Aug. 19, 2022) ........................................................... 17

*Shaw v. United States*, 16 Cr. 00642 (RJS), 2022 WL 2916324,(S.D.N.Y. July 25, 2022) ..................... 17

*Slack v. McDaniel*, 529 U.S. 473 (2000) ..................................................................... 19

*Steinhilber v. Kirkpatrick, M.*, 18 Civ. 1251 (VB)(JCM), 2020 WL 9074808 (S.D.N.Y. Aug. 21, 2020),
   *report and recommendation adopted*, 18 Civ. 1251 (VB), 2021 WL 1254554 (S.D.N.Y. Apr. 5, 2021)......6

*Strickland v. Washington*, 466 U.S. 668 (1984) ..................................................................3

*United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020) ...............................................................9, 10

*Walters v. United States*, 15 Cr. 644 (AJN), 2022 WL 890906 (S.D.N.Y. Mar. 25, 2022)...............4, 5, 10

*Williams v. Taylor*, 529 U.S. 362 (2000) ........................................................................................2

## STATUTES

28 U.S.C. § 2253(c) ............................................................................................................ 19

28 U.S.C. § 2254(d)(1) ........................................................................................................2

28 U.S.C. § 2254(d)(2) ........................................................................................................2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
GUILLERMO VILLA,

        Petitioner,

                - against -

SUPERINTENDENT MARK PASSAGE, et. al.

        Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

22 Civ. 02918 (VEC)(SDA)

## **MEMORANDUM OF LAW**

    This Memorandum of Law is submitted in support of respondent's declaration in opposition to the petition for a writ of *habeas corpus*.[1]

## **ARGUMENT**

### **THE STATE COURTS' DENIAL OF PETITIONER'S INEFFECTIVE ASSISTANCE CLAIMS WAS NEITHER CONTRARY TO NOR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT.**

    Petitioner argues that his trial attorney rendered ineffective assistance, because counsel allegedly: (1) failed to consult an expert on eyewitness identification; (2) did not "intervene or object" when petitioner stated that he wanted to speak with his family before deciding whether to waive his right to a jury trial; (3) failed to properly advise petitioner regarding his waiver of a jury trial; and (4) "improperly consented to allowing in trial testimony before the 'suppression' hearing had concluded" (Petition ¶ 12). As the state courts found, these claims lack merit. Indeed, counsel was a zealous advocate at trial, and petitioner suffered no prejudice from any of counsel's alleged errors.

---

[1] This memorandum of law includes only those facts necessary to the determination of petitioner's *habeas corpus* claims. A detailed summary of the facts presented at the state court proceedings is available on pages 3-10 of Exhibit 2, respondent's appellate brief.

A.   Standard of Review

An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to a judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" clearly established Supreme Court precedent if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).   A state court decision unreasonably applies Supreme Court precedent if the state decision "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner]'s case."  *Id.* at 413.

To warrant *habeas* relief, a state court decision must be more than merely incorrect or erroneous, it "must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than *de novo* review."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).  "If this standard is difficult to meet, that is because it was meant to be. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011).

To succeed on a claim of ineffective assistance of counsel, petitioner must establish that: (1) counsel's performance was deficient, which requires a showing that counsel's performance was unreasonable "under prevailing professional norms;" and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). In order to satisfy the prejudice component, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689. "[T]he burden of rebutting this presumption rests squarely on the defendant, and [i]t should go without saying that the absence of evidence cannot overcome [it]. In fact, even if there is reason to think that counsel's conduct was far from exemplary, a court still may not grant relief if [t]he record does not reveal that counsel took an approach that no competent lawyer would have chosen." *Dunn v. Reeves*, _U.S._, 141 S. Ct. 2405, 2410 (2021) (internal quotation marks and citations omitted).

"The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citations omitted). "The standards created by *Strickland* and § 2254(d) are both highly deferential, . . . , and when the two apply in tandem, review is 'doubly' so . . . . " *Richter*, 562 U.S. at 105 (citations omitted); *Reeves*, _U.S._, 141 S. Ct. at 2410. Judged under these "doubly" deferential standards, petitioner's claim of ineffective assistance of counsel must be rejected.

3

B.  Trial counsel had no obligation to call an identification expert at petitioner's bench trial.

To begin, contrary to petitioner's claim (Petition ¶ 12(a)(1)), his trial attorney had no duty to present testimony from an identification expert at petitioner's bench trial.   As the Supreme Court has explained, "strategic decisions -- including whether to hire an expert -- are entitled to a 'strong presumption' of reasonableness."   *Reeves*, _U.S._, 141 S. Ct. at 2410.   More particularly, and pertinent here, "declining to call an expert witness to testify as to the general reliability of eyewitness identifications does not fall outside the realm of effective counsel, especially where the specific eyewitnesses were available for cross examination."   *Brown, Jr. v Fisher*, 06 Civ. 2771 (RJS)(JCF), 2010 WL 3452420, at *6 (S.D.N.Y. Aug. 27, 2010).   Hence, an attorney's strategic choice "to rely on the evidence elicited during cross-examination can be a valid tactical decision."   *Walters v. United States*, 15 Cr. 644 (AJN), 2022 WL 890906, at *6 (S.D.N.Y. Mar. 25, 2022).   Indeed, "[c]ourts have traditionally relied upon cross examination and jury instructions as mechanisms to alert the jury to any inaccuracies or inconsistencies in the testimony of an eyewitness."   *McDowell v. Heath*, 09 Civ. 7887 (RO)(MHD), 2013 WL 2896992, at *39 (S.D.N.Y. June 13, 2013).

Here, applying these standards, petitioner's trial attorney made an appropriate strategic choice. As petitioner does not dispute, his attorney vigorously cross-examined the identifying witness at trial. Further, defense counsel pursued a reasoned strategy, arguing that Seyquana Rambert, the sole eyewitness, had not actually witnessed the shooting.   Counsel pointed out, for example, alleged discrepancies in the description of the culprit, the timing of when the ambulance arrived, and the details of the shooting (*see* Defense Opening and Summation: T. 149-150; 427-452).[2]   As the 440.10

---

[2] Numerical references preceded by "W." refer to the minutes of January 30, 2014, when petitioner executed his written waiver of his right to a jury trial; those preceded by "T." refer to the pre-trial suppression hearing and the trial minutes.

court pointed out:

> . . . [T]rial counsel's theory was that Ms. Rambert did not witness the shooting at all; that she was in her apartment when it occurred and that she came outside after [the victim] was shot right before the ambulance arrived.  Counsel's argument exploited inconsistencies between her grand jury testimony and trial testimony, her trial testimony and that of police witnesses (including her testimony that the ambulance arrived shortly after the shooting compared to the testimony of a responding officer that it took over a half hour for the ambulance to arrive) and her trial testimony and police reports (such as the description of the [petitioner] as "white Hispanic").  He also pointed out the lack of proof she called 911, timeline inconsistencies and that there was no testimony from the friend Ms. Rambert said she was on the phone with before the shooting.

(440.10 Decision, p. 7).  Thus, although the trier of fact ultimately credited the witness's account, counsel provided an effective defense.

Significantly, defense counsel's theory at trial – that the witness did not merely make a misidentification but instead fabricated her account – would not have been aided by the testimony of an identification expert.   Indeed, counsel's challenges to the witness's credibility did not turn on the matter that an identification expert would have addressed: namely, "how certain factors . . . can affect the risk of *mistaken* eyewitness identifications" (Respondent's Exhibit 7, Brian L. Cutler affidavit, dated November 19, 2020, p. 3) (hereinafter "Cutler affidavit") (emphasis added).   As explained, counsel's theory was that the witness had fabricated her account, not that she had made a *mistaken* identification. The 440.10 court, therefore, properly concluded that trial counsel had no duty to call an expert witness, since the "testimony of an expert in eyewitness identification was irrelevant to this defense theory" (*Id.*).   *See Reeves*, _U.S._, 141 S. Ct. at 2410; *Walters*, 15 Cr. 644 (AJN), 2022 WL 890906, at *6; *McDowell*, 09 Civ. 7887 (RO)(MHD), 2013 WL 2896992, at *39.

Moreover, it is not even clear that testimony from an identification expert would have been admissible at petitioner's bench trial.   In New York, when a defendant seeks to introduce expert

testimony on eyewitness identification, the trial court must consider "whether the proposed testimony is (1) relevant to the witness's identification of defendant, (2) based on principles that are generally accepted within the relevant scientific community, (3) proffered by a qualified expert and (4) *on a topic beyond the ken of the average juror.*"   *People v. Santiago*, 17 N.Y.3d 661, 669 (2011) (internal quotation marks and citation omitted) (emphasis added); *People v. LeGrand*, 8 N.Y.3d 449, 452 (2007).   Here, however, petitioner waived his right to a jury trial and instead was tried before an experienced judge, who acted as the factfinder.   At the time of petitioner's trial in 2014, the New York Court of Appeals had issued multiple rulings regarding the admissibility of expert testimony on eyewitness identification (*see, e.g., People v. Santiago*, 17 N.Y.3d 661 [2011]; *People v. LeGrand*, 8 N.Y.3d 449 [2007]).   The trial judge, therefore, presumably was familiar with the issue and the factors that could influence an eyewitness's identification.   Even if there was an identification issue at trial that was arguably "beyond the ken of the average juror," the same cannot be said of the experienced trial judge who presided as the trier of fact here.

Thus, as the 440.10 court pointed out, petitioner "ignores the critical fact that the finder of fact was not 'the average juror,' but rather an experienced judge, appointed to the bench in 1987 and who, at the time of the trial, had served in Supreme Court, Bronx County, Criminal Term, for more than two decades.   Indeed. it is the trial judge, here Justice Massaro, who would be tasked with determining whether an expert would be warranted in the first place" (440.10 Decision, p. 4).   As the 440.10 court concluded, "trial counsel's decision was all the more reasonable because the trial was not before a jury but rather before a judge."   *Steinhilber v. Kirkpatrick, M.*, 18 Civ. 1251 (VB)(JCM), 2020 WL 9074808, at *25 (S.D.N.Y. Aug. 21, 2020), *report and recommendation adopted*, 18 Civ. 1251 (VB), 2021 WL 1254554 (S.D.N.Y. Apr. 5, 2021).

Additionally, as the 440.10 court observed, the specific factors about which an identification expert could have testified – which are outlined in the Cutler affidavit that petitioner submitted to the 440.10 court (Cutler affidavit, pp. 3-4), would not have been helpful to the judge at the bench trial here.   In that regard, Ms. Rambert saw petitioner's face prior to the shooting.   She was not under any stress, nor was she focused on the weapon, which was still in petitioner's pocket at the time that she first observed petitioner's appearance.   Moreover, petitioner was not wearing a mask or a disguise – another factor that could be addressed by an identification expert.   The 440.10 court correctly concluded, therefore, that "many of the factors pointed by the [petitioner] that he claims would require the assistance of the expert are not born out by Ms. Rambert's testimony."   The court explained, "Ms. Rambert testified consistently that she was initially drawn to the [petitioner] because he was wearing a blue shirt, her favorite color, and that she was 'staring at the person who had on my favorite color' and that as they got closer to each other she 'began to stare at his face,'" and that her "initial observation of the [petitioner] was not under stressful circumstances and she was not focused on the gun" (440.10 Decision, pp. 5-6).   Indeed, in affirming petitioner's conviction on direct appeal, the Appellate Division observed that Ms. Rambert "never equivocated about her core testimony identifying [petitioner] as the person who shot the victim," and "consistently testified that her attention was drawn to the shooter because of the color of his shirt, and that she had an opportunity to 'stare at his face' as they walked by each other."   *People v. Villa*, 174 A.D.3d 438, 438-439 (1st Dept. 2019).

And, as noted, to the extent that there were any discrepancies in the witness's description of the shooter to the police, that presented merely a question of credibility, which the trial court, as the factfinder, was well equipped to decide without the aid of expert testimony.   As noted by 440.10 court, this matter was pointed out by trial counsel (*see* 440.10 Decision, p. 7), and it was well within

the trial court's purview to credit Ms. Rambert's identification testimony despite any inconsistencies in her initial description.

Next, in his 440.10 motion, petitioner proffered that an expert could testify that the witness's lineup identification was tainted by her previous identification of petitioner in a photo array (Cutler affidavit, p. 10).  But this was not a proper subject of expert testimony, because it essentially called for an expert to make a *legal* conclusion that an identification procedure was suggestive.  Nor is any such assertion *factually* supported by the record in this case.  After all, the trial court – which also presided over the suppression hearing, -- denied petitioner's suppression motion, finding that both the photo array and the lineup were not unduly suggestive (T. 141-144).  The Appellate Division affirmed, concluding that "[a]n examination of the photo array reveals that [petitioner] and the other participants were similar in appearance, and the discrepancy in skin tone was not so noticeable as to create a substantial likelihood that [petitioner] would be singled out for identification." *Villa*, 174 A.D.3d at 439.  Additionally, in deciding that there was legally sufficient evidence of petitioner's guilt, the Appellate Division noted, in part, that Ms. Rambert "identified [petitioner] in a photo array 10 days after the shooting, and in a lineup the following day, and testified that she immediately recognized him in the lineup and had no doubt about it." *Villa*, 174 A.D.3d at 439.  The Appellate Division found that Ms. Rambert's consistent identification testimony supported the guilty verdict.  And, the 440.10 court observed that the trial judge "certainly would not have required the assistance of an expert to evaluate an identification made ten days after an incident, particularly in this case where defense counsel highlighted the alleged problems with Ms. Rambert's identification" (440.10 Decision, p. 6, fn. 1).[3]

---

[3] The trial record refutes petitioner's claim, which he made in his 440.10 motion, that the detective told the witness that the perpetrator was present in the lineup.  Instead, the detective simply

8

Finally, in his 440.10 motion, petitioner inaptly relied upon *United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020), to argue that trial counsel was ineffective for not having consulted an expert.   In *Nolan*, the Second Circuit observed that "certain circumstances surrounding a crime -- including the perpetrator's wearing a disguise, the presence of a weapon, the stress of the situation, the cross-racial nature of the crime, the passage of time between observation and identification, and the witness's exposure to [the] defendant through multiple identification procedures -- may impair the ability of a witness . . . to accurately process what she observed."   *Nolan*, 956 F.3d at 80 (citations omitted).   In *Nolan*, all of the above factors were present:

> The perpetrators were wearing disguises that partially obscured their facial features . . . .   They were armed . . . .   The aggressive behavior of the robbers toward their victims plainly placed the latter under stress . . . .   Also, while the victims were black . . . and Hispanic . . . , the individual identified as a robber . . . was white. . . . Further still, many weeks elapsed between the time of the robbery and the time the victims were shown the photo array containing [the defendant's] photo . . . .   Finally, and perhaps most egregiously, the police employed highly irregular procedures in pursuing the witnesses' identification of [the defendant], potentially biasing the victims' identifications by, for example, allowing them to talk among themselves about [the defendant's] identification and allowing them to view his photos on Facebook.

---

told the witness to "look to see if she recognized anybody" (T. 53).   And, although the witness made an offhand comment at trial that the detective told her to "pick out the guy that did it" (T. 259), she made clear that she could not specifically recall what the detective had said, adding that he read the instructions from a sheet of paper (T. 259). The court, therefore, properly credited the detective's specific account of the instructions that he gave to the witness.   Nevertheless, even assuming, without conceding, that the detective's remark indicated the police had a suspect in custody, such a remark would not have rendered the lineup unduly suggestive.   *See Fields v. New York*, 18 Civ. 2579 (CBA), 2021 WL 3741506, at *6 (E.D.N.Y. Aug. 24, 2021) ("On [the witness'] awareness that there was a suspect in custody, neither [the Second Circuit] nor the Supreme Court has ruled that such statements, by themselves, render a lineup impermissibly suggestive") (internal quotation marks and citation omitted).

*Nolan*, 956 F.3d at 80-81.   The Second Circuit found trial counsel ineffective for failing to call or consult with an expert about the unreliability of the eyewitness identification despite such egregious circumstances.   *Id.* at 81.

Nolan does not support petitioner's claim here.   For one thing, as discussed, while the factors cited in *Nolan* might be beyond the ken of the average juror, they were not beyond the ken of the experienced judge who acted as the factfinder at petitioner's bench trial.   Hence, trial counsel had no duty to call an identification expert here.   Further, as noted, petitioner did not wear a mask or a disguise, and Ms. Rambert observed petitioner's face prior to the shooting -- before petitioner pulled out his weapon.   Ms. Rambert saw petitioner's face under calm, non-chaotic, pre-incident circumstances.   She viewed the photo array and the lineup ten days after the shooting, as opposed to weeks later as in *Nolan*.   Additionally, none of the irregularities in the identification procedures in *Nolan* took place here.   The police did not show petitioner's Facebook photographs nor any other photographs to Ms. Rambert.   Nor did she discuss the identification procedures with any other witnesses.

Under these circumstances, the 440.10 court reasonably determined that trial counsel had no duty to call an identification expert in the case at hand.   Further, petitioner's trial counsel thoroughly cross-examined the witness and put forth all of the factors that might have cast doubt on her identification testimony.   Therefore, petitioner suffered no prejudice from counsel's alleged error. Certainly, the state court decision rejecting petitioner's ineffectiveness claim was not contrary to, or an unreasonable application of Supreme Court precedent.   *See Reeves*, _U.S._, 141 S. Ct. at 2410; *Walters*, 15 Cr. 644 (AJN), 2022 WL 890906, at *6; *McDowell*, 09 Civ. 7887 (RO)(MHD), 2013 WL 2896992, at *39.

10

<u>C.   Trial counsel properly advised petitioner regarding his waiver of the right to a jury trial.</u>

Petitioner next claims that his trial counsel was ineffective allegedly for misadvising him regarding the waiver of his right to jury trial, and for not having objected when the trial court allegedly failed to honor petitioner's request to speak with his family before deciding to waive his right to jury trial (Petition ¶ 12(a)(2)-(3)).   The state courts properly rejected this claim too.

As the state courts found, the trial court conducted a thorough inquiry before accepting petitioner's waiver of a jury trial.   Initially, before starting the pre-trial hearings, the trial court confirmed with both defense counsel and petitioner that petitioner desired to proceed with a bench trial.   Afterwards, the court explained to petitioner the rights he would be forfeiting by choosing to forgo a jury trial, and instead, to have a bench trial:

| | |
|---|---|
| The Court: | First of all, you'll get a fair trial, no question about that.   However, you should be aware that there will be no opportunity since you are waiving it, for you to participate in the picking of a jury that will sit in judgment over you. |
| | No opportunity for your counsel to argue to twelve people.   All you need is one of those twelve to not be convinced beyond a reasonable doubt as to each and every element of one or more of the crimes and you would find yourself acquitted.   Going before the bench those odds shrink a little bit.   Now you're only one on one as opposed to one to twelve. |
| | Do you feel enough confidence in your case, have you discussed it enough with the people you think you should discuss it with and your attorney before coming to this decision?   Do you feel strong enough to go forward before the bench? |
| The Defendant: | Yes |
| The Court: | All right.   I will ask you to review a waiver . . . and if you find it in order, you may execute it and we will |

|  | proceed accordingly.   But here again I want to emphasize the right to go to trial by jury.   You have the right to pick people that you will actually help to pick and choose, and you have the right for the representation of counsel to treat [*sic*] with all court-related matters, but now you're placed solely in the hands of the Court.   Do you understand that again? |
|---|---|
| The Defendant: | Yes. |
| The Court: | I emphasize that to you. |
|  | Okay.   Look at this paper, review it with your counsel and see whether or not you find it in order. |

(W. 3-4).   The court further sought confirmation from counsel that petitioner knew the potential sentence -- a maximum of 25 years to life and a minimum of 15 years to life -- for a murder conviction (W. 5).

Afterwards, petitioner reviewed the written waiver of jury trial with his attorney.   Upon deciding that the written waiver was executed properly, the court accepted it (W. 5).   The court went further, stating to petitioner, "I'll reserve for you . . . Mr. Villa, that should you have any reflections [*sic*] in it and wish to proceed otherwise, you may share that with counsel.   So you may have a full opportunity to consider this as far as you wish to consider it" (W. 6).

The following day, after the pre-trial suppression hearing had started, the court engaged in the following colloquy with petitioner:

| The Court | . . . I suggested to you, Mr. Villa, that I would allow you to reflect overnight, what I want to ascertain, yesterday when we allocuted you, you were not under any drugs or medication or under anything along that line, alcohol, anything at all is that correct. |
|---|---|
| The Defendant: | That's correct. |
| The Court: | And has anyone in any way, and I include everyone, in any way twisted your arm, put your back to the wall |

12

|  | in any way, tried to force you or coerce you into going forwards as a bench rather than a jury trial? |
|---|---|
| The Defendant: | No. |
| The Court: | And the last thing, giving you that time to reflect, is there anyone you wish further to discuss with, talk to get advice from before going forward as we've planned to do? |
| The Defendant: | Talk to my family. |
| The Court: | Everything stays in place. |
| The Defendant: | Yes. |
| The Court: | And again, you are going forward with the bench trial as you, you already wish to do and informed the Court, correct. |
| The Defendant: | Yes. |

(T. 69).

Here, as evidenced by the record, petitioner signed the written waiver in open court upon being advised of the differences between a jury and a non-jury trial and having consulted with his attorney. The court stated that by waiving his right to a jury trial, petitioner and his attorney would not have the opportunity to select twelve jurors who would all have to be convinced of his guilt beyond a reasonable doubt. The court explained, "All you need is one of those twelve to not be convinced beyond a reasonable doubt as to each and every element of one or more of the crimes and you would find yourself acquitted" (W. 3-4). The court further informed petitioner that, "Going before the bench those odds shrink a little bit. Now you're only one on one as opposed to one to twelve" (W. 4). The court explained the key difference between a jury and a non-jury trial and emphasized that petitioner should review the written waiver form with his attorney (W. 4-5). As noted, upon reviewing the written waiver with his attorney, petitioner signed it (W. 5). Hence, the record leaves

13

no doubt that petitioner's jury trial waiver was knowing, intelligent, and voluntary.

Nevertheless, in his 440.10 motion, petitioner submitted a self-serving affidavit claiming that he did not understand the court's instructions and that defense counsel had failed to explain the differences between a bench and a jury trial.   Petitioner further faulted trial counsel for not objecting when the court did not respond to his statement that he would like to speak to his family (*see* Respondent's Exhibit 8, petitioner's NYCPL § 440.10 affidavit dated January 11, 2021, hereinafter "petitioner 440.10 affidavit").   But contrary to petitioner's claim, counsel had no duty to object. After all, petitioner had already executed a written waiver of his right to a jury trial, which the court had accepted (Respondent's Exhibit 10, Waiver of Jury Trial, dated January 30, 2014, signed by petitioner and the trial judge, hereinafter "Waiver").   As the Second Circuit has held, a trial court "is not constitutionally required to go beyond a written waiver."   *United States v. Pouryan*, 628 F. App'x 18, 20 (2d Cir. 2015); *accord United States v. Carmenate*, 544 F.3d 105, 108 (2d Cir. 2008) ("a district court is not constitutionally required to elicit an oral waiver of a defendant's right to a jury trial by conducting a colloquy or allocution on the record").   Thus, petitioner had already waived his Sixth Amendment right knowingly, voluntarily, and intelligently, and – as counsel plainly understood – there was no need for the court to conduct a further inquiry.

To be sure, the Second Circuit has "strongly encourage[d]" federal trial courts to "question a defendant on the record."   *Carmenate*, 544 F.3d at 108.   But that "encouragement" is not a constitutional rule – much less a rule announced by the Supreme Court – that would warrant federal *habeas corpus* relief from a state criminal conviction.   Moreover, as noted, the trial court had already conducted a thorough inquiry of petitioner, and there was no need to reopen that inquiry following petitioner's brief reference to his family.   Indeed, petitioner never repeated his request; instead, he reaffirmed that he wished to proceed with a bench trial.   And, notably, the record provides no reason

to conclude that petitioner would have been incapable of voicing his concerns if, in fact, he had changed his mind about waiving a jury.

Notably, petitioner's trial counsel, Andres Aranda, Esq., submitted an affirmation to the 440.10 court that did not support petitioner's claim. Although understandably not recalling every detail of the conversations he had with petitioner seven years earlier, counsel remembered discussing the waiver of a jury trial issue with petitioner. Counsel further recalled telling petitioner that counsel previously had obtained an acquittal following a bench trial before the same trial judge, and that the judge was fair. Counsel added that he had neither "dissuade[d]" nor "encourage[d]" petitioner from pursuing a bench trial (*see* Respondent's Exhibit 9, Andres Aranda, Esq., affirmation dated January 27, 2021). Counsel's affirmation, therefore, supports that conclusion that petitioner waived a bench trial after studied reflection, based – at least in part – on trial counsel's previous success before the same judge.

Additionally, in asserting that he wanted to talk to his family, petitioner did not indicate which family members he wished to consult or whether they were present in court. While, of course, a defendant should consult with counsel before waiving a jury trial, no Supreme Court precedent holds that consultation with family members is constitutionally required. In other words, the lack of consultation with family will not invalidate an otherwise valid waiver of the right to a jury trial. Indeed, there is no indication that any of petitioner's family members possessed the kind of legal education, experience or knowledge from which petitioner would have benefitted to allow him to make a more informed decision. And, when the court subsequently asked whether petitioner was still "going forward with the bench trial. . .," petitioner gave an affirmative response. He did not seek to withdraw his jury trial waiver, nor did he make any further reference to speaking to his family (T. 69).

Moreover, petitioner did not claim to have expressed any concerns about the jury trial waiver to trial counsel, either in court or following the first day of the waiver proceedings.   As stated in his affirmation, counsel believed that petitioner understood the decision.   For that reason, too, counsel had no reason to object when petitioner ultimately agreed to proceed with the jury trial, even though he had not consulted with his family

Equally meritless is petitioner's claim that trial counsel failed to properly advise him regarding his waiver of a jury trial.   Once again, the written waiver signed by petitioner states, in pertinent part, "I, the defendant herein . . . having been informed of my right to a trial by jury . . . consent to a trial by the Court without a jury" (Waiver).   The waiver stated that petitioner would be tried "without a jury."   Again, petitioner did not express any confusion in court, and the constitution did not require the court to look beyond the written waiver.   And, of course, the court's oral colloquy was thorough, as detailed above.

While, in his 440.10 motion, petitioner made much of the court's remark that a jury trial would be beneficial because he would only need to convince one juror in order to obtain an acquittal (W. 3-4; petitioner's 440.10 memorandum, pp. 29-30), this comment at most *overstated* the benefits of a jury trial and thus, certainly, did not cast doubt on the voluntariness of petitioner's decision to waive a trial by jury.   Nor was there any error in the court's comment that, at a bench trial, only "one" guilty vote was required as opposed to "twelve" (W. 4).   After all, that statement was correct.   And once again, even if the court oversold the benefits of a jury trial, the effect would not have been to coerce a waiver of petitioner's Sixth Amendment right; instead, it would have made defendant more likely to insist on a trial by jury.

Importantly, while deciding that petitioner's claim on direct appeal challenging the validity of the waiver of his right to a jury trial was unpreserved, the Appellate Division alternatively held that it

16

found "nothing in the existing record to cast doubt" upon the waiver. *Villa*, 174 A.D.3d at 439. Consequently, it is understandable that trial counsel did not raise any objections to the court's colloquy. Indeed, in denying petitioner's 440.10 motion, court explained that "The Appellate Division unanimously found the issue underlying the [petitioner's] ineffectiveness claim lacked merit, specifically finding that the [petitioner's] jury trial waiver was proper despite his claim it was not because he asked to speak with his family. As such, the [petitioner] cannot establish he was prejudiced" (440.10 Decision, p. 11).

Petitioner's *habeas* claim should be denied for the same reason. Simply put, the jury trial waiver was plainly valid, and thus petitioner suffered no prejudice from counsel's failure to ask the court to engage in additional inquiry. *Rivera v. Kaplan*, 17 Civ. 2257 (RA)(SN), 2020 WL 5550047, at *22 (S.D.N.Y. July 20, 2020) (rejecting *habeas* claim upon following the rationale of 440.10 motion court which had decided that "in light of the Appellate Division's decision, '[i]t therefore follows that defense counsel could not be found ineffective'"), *report and recommendation adopted*, 17 Civ. 2257 (RA)(SN), 2022 WL 3572880 (S.D.N.Y. Aug. 19, 2022); *see also Shaw v. United States*, 16 Cr. 00642 (RJS), 2022 WL 2916324, at *5 (S.D.N.Y. July 25, 2022) ("the failure to make a meritless argument does not rise to the level of ineffective assistance") (internal quotation marks and citation omitted).

Finally, the record does not demonstrate that, if petitioner had consulted further with his family, "he would have opted to proceed with a jury trial." *Cabrera v. New York*, 16 Civ. 7938 (KPF), 2018 WL 5276425, at *20 (S.D.N.Y. Oct. 23, 2018). Nor does the record provide any "reason to suppose that the outcome of the trial would have been different if Petitioner had proceeded with a jury trial." *Id.* Therefore, the *habeas* petition should be denied, because "even absent trial counsel's alleged errors . . . there is no reasonable basis to conclude that the proceedings would have resulted in a different outcome." *Id.*

**D.   Counsel was not obligated to object to the court's decision to receive trial testimony before the conclusion of the suppression hearing.**

Finally, trial counsel did not render ineffective assistance by consenting to the receipt of some inconsequential trial testimony during the suppression hearing (*see* Petition ¶ 12(a)(3)).

During the suppression hearing, the trial court heard trial testimony from Detective Anthony Ribustello of the NYPD crime scene unit that, on September 24, 2011, at approximately 5:40 p.m., he recovered three shell casings, a sweatshirt, a sneaker, and headphones from the vicinity of 1240 Burke Avenue in the Bronx (T. 72-113).   In his 440.10 motion, petitioner argued that trial counsel should have objected to this testimony, on the grounds that the trial testimony by the crime scene detective regarding the items he recovered at the scene, such as the ballistics and the victim's bloody sweatshirt, would unduly influence the court's suppression ruling -- especially on whether "the cross-racial identification of the sole eyewitness was not reliable" (petitioner's 440.10 memorandum, p. 33).

As the state courts concluded, however, the crime scene detective's testimony was "inconsequential," and there is no reasonable probability that it could have influenced the court's suppression decision.  *See Villa*, , 174 A.D.3d at 439.   Petitioner offers no rationale to support his conclusory allegation that the detective's testimony had any impact on the suppression court's determination.   Thus, as the 440.10 court concluded, petitioner's counsel had no duty to object to the detective's testimony.   Rather, trial counsel reasonably consented to the court's desire to take the testimony early, which apparently arose from the witness's scheduling issues (*see* 440.10 Decision at 12).   The 440.10 court thus correctly found, "As with the [petitioner's] claim regarding the jury trial waiver, since the Appellate Division unanimously found the issue underlying his current ineffectiveness claim lacked merit, specifically finding that the court's suppression decision was proper despite hearing 'inconsequential' trial testimony, he cannot, and has not, established he was

prejudiced" (440.10 Decision, pp. 12-13).

Notably, as a court in this District has previously observed, New York appellate courts have held that "trial courts may 'properly conduct[] a combined pretrial suppression hearing and nonjury trial.'   Nor is it a violation of federal law to decide pretrial suppression motions at trial.   Accordingly, trial counsel's decision not to insist on a separate, pre-trial suppression hearing was aligned with state and federal law and thus was far from falling below an 'objective standard of reasonableness.'"   *Brown v. Lee*, 14 Civ. 9718 (KMK), 2019 WL 5078360, at *8 (S.D.N.Y. Oct. 10, 2019) (citations omitted).

In sum, as the 440.10 court observed, trial counsel was a zealous advocate for petitioner's cause.   Counsel vigorously cross-examined the People's witnesses and presented an effective defense. Petitioner has not shown that any of counsel's challenged conduct amounted to ineffective assistance, much less that the state court's denial of petitioner's ineffectiveness claim was unreasonable. Accordingly, the *habeas corpus* petition should be denied.

* * *

Because petitioner has failed to make a substantial showing that he was denied a constitutional right, this Court should not issue a certificate of appealability on this question.   *See* 28 U.S.C. §
2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 341-342 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-
484 (2000).

## CONCLUSION

**PETITIONER'S APPLICATION FOR A WRIT OF *HABEAS CORPUS* SHOULD BE DENIED IN ALL RESPECTS.**

BY:

<u>      s/ T. Charles Won      </u>
T. CHARLES WON (TW1121)
Assistant District Attorney

DARCEL D. CLARK
District Attorney
Bronx County
198 East 161st Street
Bronx, New York 10451
(718) 838-7129

DAVID M. COHN
RAFAEL CURBELO
T. CHARLES WON
Assistant District Attorneys
      Of Counsel

SEPTEMBER 2022

20