SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX : PART 78
------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

     -against-                                Ind. No. 3376/11

GUILLERMO VILLA,

          Defendant.
------------------------------------------------------------X

Marcus, J.:

     On April 23, 2014, in the Supreme Court, Bronx County, the defendant was convicted after a bench trial before the Honorable Dominic R. Massaro of Murder in the Second Degree and Criminal Possession of Weapon in the Second Degree, and sentenced, as a second felony offender, to concurrent prison terms of twenty-five years to life and fifteen years, with five-years post-release supervision. The conviction stems from the defendant's September 24, 2011 shooting of Cedric Sambolah, witnessed by Mr. Sambolah's girlfriend Seyquana Rambert. The defendant's conviction was unanimously affirmed on appeal, People v. Villa, 174 A.D.3d 438 (1st Dept. 2019) and leave to appeal was denied. People v. Villa, 34 N.Y.3d 1019 (2019).

     The defendant now moves, through counsel, to vacate the judgment pursuant to CPL § 440.10. He argues that that his trial attorney was ineffective for: failing to obtain the assistance of an expert in eyewitness identification; failing to intervene when he indicated to the judge that he wanted to consult with his family before waiving a jury; failing to counsel him on the rights he would be waiving by choosing a bench trial; and improperly consenting to allowing trial testimony to be heard during the suppression hearing. The

People oppose the defendant's motion. For the reasons set forth below, the defendant's motion is summarily denied.

When a defendant makes a claim of ineffective assistance of counsel, the court must first "determine on [the] written submissions whether the motion can be decided without a hearing," and the defendant is required to show that the facts he seeks to establish are "material and would entitle him to relief." People v. Satterfield, 66 N.Y.2d 796, 799 (1985) (citing CPL §§ 440.30[1]; 440.30[4][a]). Under New York law, to prevail on a claim of ineffective assistance, a defendant must demonstrate that his attorney failed to provide meaningful representation. People v. Benevento, 91 N.Y.2d 708, 713 (1998). Under federal law, a defendant must show, first, "that counsel's representation fell below an objective standard of reasonableness," and, second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). While in New York the Strickland prejudice prong is not "applied [] with [] stringency," it is "a significant but not indispensable element in addressing meaningful representation." People v. Stultz, 2 N.Y.3d 277, 283-84 (2004).

**Expert in Eyewitness Identification**

The defendant contends that his trial attorney was ineffective for failing to "consult with or present expert testimony from an eyewitness identification expert to educate himself and to instruct the fact finder on the high probability of a mistaken identification in a case such as [his], involving significant factors that could adversely affect an eyewitness's ability to accurately identify the perpetrator." The factors the defendant

2

alleges rendered Ms. Rambert's identification unreliable in such a way that would have not been readily apparent to the fact finder include: cross-racial identification (Ms. Rambert as a black woman identified the perpetrator as "white Hispanic," and the defendant is black Hispanic); "memory storage issues" related to the ten-day period between the crime and Ms. Rambert's photo array identification "that only included brown and Black men;" that in the line-up the next day the detective told her to "pick out the guy that did it;" the correlation between witness confidence and reliability; and that Ms. Rambert "was in a highly-stressful situation with limited time to view the shooter's facial characteristics, especially where she was focused on the gun as soon as he pulled it out." In support of his claim, the defendant has provided an affidavit from Brian L. Cutler, PhD, who has thirty years of experience as a professor and administrator at various universities, and who since 1983 has conducted research on forensic and social psychology topics, and currently has active research programs on eyewitness memory, interrogations and police psychology. See affidavit of Brian L. Cutler, PhD, appended to the defendant's motion. In his affidavit, Dr. Cutler has provided his general opinion on the factors that can affect the risk of mistaken eyewitness identification.

Experts in eyewitness identification may be appropriate in cases like this one where the eyewitness identification of one witness is the primary evidence establishing a defendant's culpability. See People v. Santiago, 17 N.Y.3d 661 (2011), People v. LeGrand, 8 N.Y.3d 449 (2007). When a defendant seeks to introduce such an expert, the trial court must consider whether the proposed expert testimony is relevant to the witness's identification of the defendant, based on principals generally accepted within the relevant

3

scientific community, proffered by a qualified expert, and on a topic "beyond the ken of the average juror." Santiago, 17 N.Y.2d at 669. Here, finding the defendant's trial attorney ineffective for failing to consult with and call an expert ignores the critical fact that the finder of fact was not "the average juror," but rather an experienced judge, appointed to the bench in 1987 and who, at the time of the trial, had served in Supreme Court, Bronx County, Criminal Term, for more than two decades. Indeed, it is the trial judge, here Justice Massaro, who would be tasked with determining whether an expert would be warranted in the first place. See Santiago, 17 N.Y.3d at 669.

Trial counsel pointed out during his summation "we all know there is a little bit of a problem with one eyewitness. There has been a lot of literature written about that recently" and that "[t]here has been a lot of the old cases in which one eyewitness testified and someone was convicted are being overturned." Trial transcript, pp. 427-28. And he noted that Justice Massaro "has a lot of experience. . . You have been a judge for a long time. Before that you had a lot of experience as a lawyer. So I'm not talking to a lay person with no experience. . . I am talking to a seasoned senior trial Judge in the Bronx who has seen a lot of cases." Thus, trial counsel was familiar with the issues with one witness identification cases and keenly aware of before whom he was trying the case. See People v. Radcliffe, 25 Misc.3d 1245A (Sup. Ct. Bx. Co. 2009) (in denying the defendant's CPL § 440 motion based upon ineffective assistance of counsel for waiving a jury trial and presenting a misidentification defense, the Honorable Richard Lee Price found counsel's "decision to proceed solely on a theory of misidentification by resting on the pre-trial [Wade/Crews] hearing testimony and stipulations. . .was part of a reasonable trial strategy,"

especially since counsel based his decision in part on Justice Massaro telling him that he was "'intimately acquainted with the vagaries of eyewitness identification.'").

Counsel effectively brought out all the alleged inconsistencies in Ms. Rambert's testimony, and his familiarity with the facts surrounding her identifications are clear in his cross examination of Ms. Rambert and other prosecution witnesses. These inconsistencies would go to her credibility, something Justice Massaro was capable of evaluating without the aid of an expert. That he found the defendant guilty does not evince otherwise. Indeed, in affirming the defendant's conviction, the Appellate Division found "no basis for disturbing the court's credibility determinations" and that

> [a]lthough there were inconsistencies between the eyewitness's testimony and her out-of-court statements, and between her testimony and that of police witnesses, she never equivocated about her core testimony identifying the defendant as the person who shot the victim. She consistently testified that her attention was drawn to the shooter because of the color of his shirt, and that she had an opportunity to 'stare at his face' as they walked by each other.

Villa, 174 A.D.3d at 438-49. Moreover, nothing in Dr. Cutler's affidavit calls into question the trial court's ability to evaluate Ms. Rambert's testimony without the aid of an expert.

Additionally, many of the factors pointed out by the defendant that he claims would require the assistance of an expert are not born out by Ms. Rambert's testimony. In both her direct and cross examinations Ms. Rambert testified that she described the defendant as being black and Hispanic, and that the description of "white Hispanic" attributed to her was an error by Detective Sean O'Connell. Trial transcript, pp. 213, 264, 268, appended to the defendant's motion. Ms. Rambert testified consistently that she was initially drawn to the defendant because he was wearing a blue shirt, her favorite color, and that she was

"staring at the person who had on my favorite color" and that as they got closer to each

other she "began to stare at his face." Trial transcript, pp. 206, 208, 212, 294, 335, 349,

appended to the defendant's motion.  According to her testimony, she observed the

defendant on a sunny morning with no obstructions between them.  As she changed

direction, Ms. Rambert testified that she observed the defendant move his hand towards

his pocket and pull out a gun, and at that point she ran and heard, but did not see, the first

shots fired.  Thus, Ms. Rambert's initial observation of the defendant was not under

stressful circumstances and she was not focused on the gun.  Finally, Ms. Rambert was

clear in her testimony that when she said the detective who conducted the line-up told her

to "pick out the guy that did it" that those were her words, and not what the detective

verbatim told her.  She also testified that when instructing her the detective was reading

from a paper.  Detective O'Connell testified that before Ms. Rambert viewed the line-up,

he read from a document, the "lineup viewing instructions," and told her:

> I was going to lift the blinds, she was going to look, there would be some individuals
> in front of her, look to see if she recognized anybody.  If she did, indicate which
> number and where she recognized him from.

Trial transcript, p. 53.  The detective also testified that he did not tell her the purpose of the

line-up, that he read directly from the document, and that he added to the document

"Investigation in the area of 1240 Burke Avenue on September 24, 2011."[1]

---

[1] Dr. Cutler opines that the accuracy of an identification declines over time and that an identification can
be influenced by misleading post-event information.  He also notes that "highly confident identifications
are more likely to be correct than identifications made with low or moderate confidence," but that factors
such as viewing conditions, outside information and suggestive identification procedures can impact
confidence and accuracy.  The defendant has not shown that any of these issues would be "beyond the ken"
of Justice Massaro and he certainly would not have required the assistance of an expert to evaluate an

In any case, trial counsel's theory was that Ms. Rambert did not witness the shooting at all; that she was in her apartment when it occurred and that she came outside after Mr. Sambolah was shot right before the ambulance arrived.  Trial transcript, pp. 400-408, 427-439.  Counsel's argument exploited inconsistencies between her grand jury testimony and trial testimony, her trial testimony and that of police witnesses (including her testimony that the ambulance arrived shortly after the shooting compared to the testimony of a responding officer that it took over a half hour for the ambulance to arrive) and her trial testimony and police reports (such as the description of the defendant as "white Hispanic"). He also pointed out the lack of proof she called 911, timeline inconsistencies and that there was no testimony from the friend Ms. Rambert said she was on the phone with before the shooting.  The testimony of an expert in eyewitness identification was irrelevant to this defense theory, and thus there was no need to call such an expert at the trial.  That the defendant may now disagree with counsel's strategy is not grounds for finding him ineffective.  People v. Chen, 293 A.D.2d 362 (1st Dept. 2002) (Hind-sight disagreements over trial strategy are insufficient to establish ineffective assistance of counsel).

For these reasons, the defendant has failed to establish that by not calling an expert witness on identification his attorney did not provide meaningful representation, Benevento, 91 N.Y.2d at 713, that his "representation fell below an objective standard of reasonableness," or that "there is a reasonable probability that, but for counsel's

---

identification made ten days after an incident, particularly in this case where defense counsel highlighted the alleged problems with Ms. Rambert's identification.

unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 688, 694.

**Jury Waiver**

The trial court's inquiry into the defendant's jury waiver was conducted over two days. <u>See</u> minutes, dated January 30 and 31, 2014, appended to defendant's motion. On January 30, 2014, the court went through with the defendant the rights he would be giving up by waiving a jury and ensured he understood. Multiple times the court went over the significance of waiving a jury:

> you should be aware that there will be no opportunity since you are waiving it, for you to participate in the picking of a jury. . . [n]o opportunity for your counsel to argue to twelve people. All you need is one of those twelve people to not be convinced beyond a reasonable doubt as to each and every element of one or more of the crimes and you would find yourself acquitted. Going before the bench those odds shrink a little bit. Now you're only one on one as opposed to one to twelve. . . again I want to emphasize the right to go to trial by jury. You have the right to pick people that you will actually help to pick and choose. . . but now you're placed solely in the hands of the Court."

<u>See</u> January 30, 2014 minutes, pp. 27-28. After each time the court explained the rights the defendant was waiving, the Court asked him if he understood, and each time the defendant unequivocally responded yes. <u>Id</u>. The court asked the defendant "have you discussed it enough with the people you think you should discuss it with and your attorney before coming to this decision" to which the defendant responded, "Yes." <u>Id</u>. at 28. The court asked the defendant to review the written waiver with his attorney, inquired if he discussed with his attorney his sentence exposure, and went over it on the record anyway. <u>Id</u>. at 28-28. And, despite accepting the defendant's waiver, the court, on its own, informed the defendant he could reflect on his decision overnight so he "would have a full

opportunity to consider [the waiver]" and that he could inform his attorney if he changed his mind. Id. at 30.

As promised, the next day, the court revisited the defendant's waiver, asking him if he was under the influence of drugs, medication or alcohol when he made the waiver or if anyone "twisted your arm, put your back to the wall. . .tried to force you or coerce you into going forward as a bench rather that a jury trial" to which the defendant stated no. See minutes, dated January 31, 2014, p. 69. The court then asked the defendant if there was anyone further he would like to "talk to to get advice from before going forward as we've planned to do?" In response, the defendant stated, "Talk to my family," and the court stated, "Everything stays in place," and the defendant responded only with, "Yes."

The trial court over two days repeatedly in painstaking and clear detail went through the rights the defendant was waiving by proceeding with a bench trial. The defendant each time unequivocally stated that he understood and was waiving a jury trial. Moreover, despite the defendant's clearly stated decision to waive a jury in favor of a bench trial on January 30, 2014, the court gave him an opportunity to reconsider his decision overnight. While on January 31, 2014 the defendant indicated he may want to talk to his family, the day before when the court asked him if he had "discussed it enough with the people you think you should discuss it with and your attorney before coming to this decision" the defendant responded, "Yes." Id. at 28. When the court did not respond to the defendant's statement, instead indicating they would go forward with the bench trial, the defendant simply stated "Yes." He did not indicate any hesitancy or further desire to consider the

waiver and speak with his family, nor did he protest proceeding without having had the opportunity to do so.

Moreover, his trial attorney contradicted the defendant's allegation that he did not explain to him "that by choosing a bench trial, I would be giving up my right to have a jury of twelve people to determine the verdict" or that the next day he "was not certain [he] wanted to have a bench trial . . . and wanted to talk to [his aunt] for her advice." See defendant's affidavit, paragraphs 5-8.  His former attorney affirmed that while he did not "recall the specific details around the decision for Mr. Villa to waive a jury trial and have a bench trial" he did recall discussing with him previously obtaining an acquittal in front of Judge Massaro" and that he "did not dissuade Mr. Villa from having a bench trial, nor did I encourage him to." See affirmation of Andres Aranda, paragraphs 6-7.  Notably, the defendant does not include an affidavit from his aunt or any other family members indicating they would have advised him to proceed with a jury trial.  That the defendant avers that he trusted his attorney because he had represented other family members on other matters indicates that his family had been satisfied with Mr. Aranda's advice and representation in the past.

Finally, on direct appeal, the defendant argued that he did not knowingly, intelligently and voluntarily waive his right to a jury trial, specifically arguing that the trial court abused its discretion by not addressing the defendant's request to speak with his family and that his trial attorney was ineffective for failing to object or request a further inquiry by the court into the jury trial waiver.  See Appellant's brief, appended to defendant's motion and the People's response.  The Appellate Division held, "we find

nothing in the existing record to cast doubt on either of these waivers, or to suggest that further inquiry by the court was necessary in either instance." <u>Villa</u>, 174 A.D.3d at 439. While recognizing the defendant's ineffectiveness claim involved matters outside of the record, the Court nonetheless found, "to the extent the existing record permits review, we find that defendant received effective assistance under the state and federal standards." The Appellate Division unanimously found the issue underlying the defendant's ineffectiveness claim lacked merit, specifically finding that the defendant's jury trial waiver was proper despite his claim it was not because he asked to speak with his family. As such, the defendant cannot establish he was prejudiced or that he did not receive meaningful representation. <u>See</u> <u>Strickland</u>, 466 U.S. at 694; <u>Benevento</u>, 91 N.Y.2d at 713; <u>People v. Flowers</u>, 28 N.Y.3d 536, 541 (2016) (an attorney will not be deemed ineffective for failing to make a motion or argument that has little or no chance of success).

The defendant specifically indicated during the court's colloquy that he had discussed the waiver with his attorney and anyone else he wanted to discuss it with. Nothing in the record reveals any confusion by the defendant or that he did not understand the waiver. Indeed, the record belies the defendant's self-serving allegations that his attorney did not explain to him what it meant to waive a jury and that had he been given an opportunity to speak with his aunt he would have withdrawn his waiver. Accordingly, the defendant's motion on this ground is denied because an "allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and

(ii) under these and all other circumstances attending the case, there is no reasonable possibility such allegation is true." CPL § 440.20(4)(d).

**Trial Testimony During <u>Wade/Dunaway</u> Hearing**

During the suppression hearing, the court heard trial testimony from Detective Anthony Ribustello of the New York City Police Department Crime Scene Unit. He testified about recovering three shell casings, a sweatshirt, a sneaker and headphones from the vicinity of 1240 Burke Avenue, the crime scene area. The defendant argues that his attorney was ineffective for consenting to have the trial testimony, as well as certain exhibits, introduced into evidence before the conclusion of the hearing because "this trial evidence certainly could have influenced the fact-finding Court's perspective of the case." The defendant appears to argue that Justice Massaro's denial of the suppression motion may have been influenced by hearing Crime Scene Unit testimony and viewing "photos of the deceased's bloody sweatshirt." Although counsel did not recall exactly why he consented to having this trial testimony taken during the hearing, he "believe[d] that it had something to do with the unavailability of a witness." Affirmation of Andres Aranda, Esq., appended to the defendant's motion.

The defendant's claim is entirely speculative. Nothing in the record before this Court indicates that the trial court's suppression decision and trial verdict were based on anything other than a proper evaluation of the evidence before it. In fact, on direct appeal, the defendant argued that the trial court erred and that trial counsel was ineffective for allowing trial testimony to be heard before the conclusion of the suppression hearing, <u>see</u>

Appellant's brief, appended to defendant's motion and the People's response, and the Appellate Division held:

> The court properly denied defendant's suppression motion. . . the defense consented to the inconsequential presentation of some trial testimony before determination of the suppression motion, and despite the hearing court's noncompliance with CPL 710.60 (6), this Court has an adequate record on which to make its own findings and conclusions,

and that "to the extent the existing record permits review, we find that defendant received effective assistance under the state and federal standards." Villa, 174 A.D.3d at 439. As with the defendant's claim regarding the jury trial waiver, since the Appellate Division unanimously found the issue underlying his current ineffectiveness claim lacked merit, specifically finding that the court's suppression decision was proper despite hearing "inconsequential" trial testimony, he cannot, and has not, established he was prejudiced or that he did not receive meaningful representation. See Strickland, 466 U.S. at 694; Benevento, 91 N.Y.2d at 713; People v. Flowers, 28 N.Y.3d 536, 541 (2016) (An attorney will not be deemed ineffective for failing to make a motion or argument that has little or no chance of success).

**Trial Counsel's Performance**

A review of the transcripts of the proceedings in this case reveal that trial counsel was well-versed in the facts of the case and knowledgeable of the relevant legal principals. He effectively cross examined the People's witnesses and made appropriate objections and arguments. In his dismissal motions and summation he cohesively presented to the court the theory of the case he had been developing through his cross examination – that Ms. Rambert had lied when she told the police and testified that she witnessed the shooting.

He pointed out each inconsistency in her statements and testimony, omissions in the People's case and went through a timeline of events in support of his argument.  Defense counsel was a zealous advocate on the defendant's behalf, and that his trial strategy was ultimately unsuccessful does not render his representation ineffective.

Accordingly, for the reasons set forth above, I find the defendant has failed to establish that his attorney was ineffective under either the state or federal standards, and the defendant's motion is therefore summarily denied in its entirety. Satterfield, 66 N.Y.2d at 799; Benevento, 91 N.Y.2d at 713; Strickland, 466 U.S. at 688, 694.

Dated: September 28, 2021

_____
MARTIN MARCUS
J.S.C.

Honorable Martin Marcus

14